**DISTRICT OF COLUMBIA, Petitioner,**

v.

**The GEORGE WASHINGTON UNI-VERSITY, Respondent.**

**Nos. 12290–12293.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1955.

Decided Feb. 10, 1955.

Petition for Rehearing In Banc Denied March 15, 1955.

Danaher, Circuit Judge, dissented.

———◆———

Mr. George C. Updegraff, Asst. Corporation Counsel for the District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Asst. Corporation Counsel, Washington, D. C., were on the brief, for petitioner.

Mr. Cary McN. Euwer, Washington, D. C., with whom Mr. J. Edward Burroughs, Washington, D. C., was on the brief, for respondent.

Before EDGERTON, WILBUR K. MILLER, and DANAHER, Circuit Judges.

PER CURIAM.

In the crowded neighborhoods in which it carries on its work, George Washington University owns and operates automobile parking lots for the free use of a few of its faculty members and employees. The District of of Columbia Tax Court ruled that the lots are exempted from taxation by an Act of Congress which exempts "Grounds belonging to and reasonably required and actually used for the carrying on of the activities and purposes of any institution or organization entitled to exemption under the provisions of this Act." 56 Stat. 1090, Par. (r) (1), D.C.Code 1951, § 47–801a(r) (1). Universities are entitled to certain ex-

8. Southern Pacific Co. v. United States, 1926, 272 U.S. 445, 447, 47 S.Ct. 123, 71 L.Ed. 343.

emptions under the Act. 56 Stat. 1090, Par. (j), D.C.Code 1951, § 47–801a(j).

We agree with the Tax Court. If the University brought members of its staff to and from work in its own cars, clearly the cars would be "used for the carrying on of the activities and purposes" of the university.[1] We think it equally clear that its parking lots, which facilitate access of its staff members to their work, are used for the carrying on of its activities and purposes. And in the congested areas where they are located these lots, though not absolutely necessary, are "reasonably required". Though the amount of taxation directly involved is small the District complains that the aggregate amount of exempt property in the District is large, and that this is burdensome. But such considerations are not for the courts but for Congress.

Affirmed.

DANAHER, Circuit Judge (dissenting).

The District of Columbia government has already exempted from taxation University-owned parking lots where such "grounds" are employed for parking vehicles owned and used by the University itself. The court now would extend the exemption to certain lots owned by the University but used for the free parking of 177 cars which are the private property of certain University employees and faculty members. The record shows that at least 60 per cent of approximately 2,000 employees and faculty members could qualify for free parking of their own vehicles if the University could provide the space. The District fears that the University will acquire additional grounds for that very purpose and withdraw the same from the tax rolls if tax exemption shall be extended to such grounds. That such fears are not without foundation may be deduced from testimony in the record that University authorities are "very anxious to acquire, within a certain area, all of the property that we can that fits into the orderly development of the University." Up to within the last two or three years there were houses or buildings on the grounds here in question, or at least on some of them, which were rented out by the University, and the realty was taxable and taxes were paid. Latterly, however, such buildings have been razed, the lots have been levelled off and free parking places have been provided for use, not by the University for its own cars but for parking the privately owned cars of those to whom the privilege has been extended. There can be no question that free parking space for the private automobiles of such employees and faculty members is a great convenience. If the University can acquire sufficient additional "grounds" to provide similar free parking space for 1,000 or more additional employees and faculty members, they too will be convenienced. If the majority is correct, this convenience is to be achieved by removing taxable property from the tax rolls and placing an additional tax burden on the remaining taxpayers of the District. That is, such will be the result unless the Congress, when advised how its exemptions statute has been construed, shall vote increased federal appropriations for the District. A good case can be made out for that result.

As I see it, however, the legislative scheme is clear. D.C.Code § 47–801a (1951)[1] provides "The real property exempt from taxation in the District of Columbia shall be the following and none other * * *." University *buildings* are exempt under Subsection (j). Exempt furthermore, under Subsection (r) (1), are "Grounds belonging to and reasonably required and actually used for the carrying on of the activities and purposes of * * *" the University, which will include, at least, the grounds upon which the exempted buildings are erected. Surely "activities and pur-

1. Whether or not a statutory tax exemption was applicable.

1. 56 Stat. 1089 (1942).

poses" must refer to the University's operations as such to the extent that they "embrace the generally recognized relationship of teacher and student." Subsection (j). Where the statute mentions grounds "reasonably required," it refers to land presently needed for educational purposes. When the statute talks about grounds "actually used," it means grounds which are in fact being used and not grounds which some day will be used for educational purposes. But grounds, satisfying the educational "activities and purposes" requirement come within subsection (r) (1), and are tax exempt.

Congress next dealt in subsection (r) (2) with "additional grounds," drawing a distinction as to the latter and placing them in a category for which exemption might be granted only upon the filing of a written application under oath setting forth that such additional grounds are not held for profit or sale "but only for the enlargement and expansion of said institution or organization." The purpose was to place a limitation upon the tax exempt lands owned as of July 1, 1942. Moreover, demonstrative that possible taxable status was recognized even as to this category, Congress provided that should such "additional grounds" later be sold at a profit, "taxes thereon for each year from the date of acquisition of such property for which no tax has been paid shall immediately become due and payable, without interest" to the extent of 50 per cent of the net profit derived from the sale. The record does not disclose whether the "grounds" here involved belonged to the University as of July 1, 1942. If after acquired, as "additional grounds," they do not qualify for tax exemption under Subsection (r) (2) so far as this record discloses. Whether after acquired or owned as of July 1, 1942, the grounds can qualify under Subsection (r) (1) only if the majority is here correct.

The University argues that the lots are "reasonably required" for parking purposes. In my view the exemptions statute must be strictly construed.[2] Moreover, the purpose of the statute must be ascertained in the light of the "use test" mentioned by Chief Judge Groner in Howard University v. District of Columbia,[3] and that means, he said, "the *present* use and not the intended use in the future which is controlling." In my view, the 1942 Act was talking about grounds "actually used" for the educational purposes of the University, not about private parking for privately owned cars even though they belong to persons connected with the University.

Perhaps Congress should be asked to extend the District of Columbia Motor Vehicle Parking Facility Act of 1942[4] with appropriate adaptations to meet the University needs. Thus, parking facilities for employees, students and faculty could be provided on such basis as to be self-sustaining and result further, in the spirit of the Act, in "no discrimination in rates or privileges" among the users of the parking facilities. Congress would be required to deal forthrightly with the problem.

I see no basis upon which the exemptions statute can be construed to permit the University in its sole discretion, despite previous Congressional limitation, to say what and how many properties shall be acquired and converted to tax free status, or if presently owned shall be withdrawn from the tax rolls, in order to provide free parking for the cars of the University personnel. If it can be done for 177 privately owned cars, it can be done for 2,000.

2. Hebrew Home for the Aged v. District of Columbia, 1944, 79 U.S.App.D.C. 64, 142 F.2d 573.

3. 1946, 81 U.S.App.D.C. 40, 155 F.2d 10, 11, certiorari denied 1946, 329 U.S. 739, 67 S.Ct. 53, 91 L.Ed. 638.

4. 56 Stat. 93 (1942), D.C.Code § 40-801 et seq. (1951).